DOUGLAS C. SMITH, #10805
**LEWIS BRISBOIS BISGAARD & SMITH** LLP
6550 South Millrock Drive, Suite 200
Salt Lake City, UT 84121
Telephone: 801.562.5555
Facsimile: 801.562.5510
Douglas.Smith@LewisBrisbois.com

MICHAEL K. GRIMALDI, Cal. Bar #280939 (Pro Hac Vice Forthcoming)
ERIC Y. KIZIRIAN, Cal. Bar #210584 (Pro Hac Vice Forthcoming)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Telephone:  (213) 680-5081
Facsimile:  (213) 250-7900
Michael.Grimaldi@lewisbrisbois.com
Eric.Kizirian@lewisbrisbois.com

*Attorneys for Defendants*
BAKER MILLS, INC. and KODIAK CAKES, LLC

---

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **ALEX HINKLEY, MEGAN TAYLOR, and SHIELA CRAWFORD, KERRI OWENS, ANAND SAJNINI, AND LAUREN BASSART as individuals, on behalf of themselves, the general public and those similarly situated,**<br><br>        **Plaintiffs,**<br><br>**vs.**<br><br>**BAKER MILLS, INC.; and KODIAK CAKES, LLC**<br><br>        **Defendants.** | **DEFENDANTS BAKER MILLS, INC. AND KODIAK CAKES, LLC'S MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Civil No.  2:21-cv-221 BSJ<br><br>Judge Bruce S. Jenkins<br><br><br>Oral Argument Requested |

# NOTICE OF MOTION

## PRECISE RELIEF SOUGHT AND SPECIFIC GROUNDS FOR THE MOTION

Defendants Baker Mills, Inc. and Kodiak Cakes, LLC ("Kodiak") seek an order under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b) dismissing with prejudice plaintiffs' First Amended Complaint[1] for lack of standing and failure to state a claim upon which relief can be granted for the following reasons:

1. Plaintiffs' labeling claims are preempted by federal law.

2. Plaintiffs' labeling claims fall under FDA's primary jurisdiction and should be stayed pending further guidance from FDA.

3. Plaintiffs have not adequately alleged reliance.

4. Plaintiffs' requests for equitable relief fail because they failed to allege inadequacy of legal remedies.

5. Plaintiffs fail to allege any injury, "false representation," intent to defraud/scienter, knowledge of falsity, or a duty to disclose to support their claims.

6. Plaintiffs lack Article III standing because they do not allege any injuries in fact.

7. Plaintiffs' 49-State class claims fail because (1) plaintiffs lack standing and (2) plaintiffs' unjust enrichment and fraud claims are not tethered to a specific state law.

Plaintiffs incorrectly numbered their causes of action, claiming that their unjust enrichment claim is their sixth cause of action and their common law fraud claim is their seventh cause of action. To clarify any potential confusion, Defendants note the unjust enrichment claim is actually

---

[1] This complaint includes five plaintiffs, Megan Taylor, Alex Hinkley, Sheila Crawford, Kerri Owns, Anand Sajnani, and Lauren Bassart, claiming to have purchased Kodiak products in Illinois, New York, Florida, Texas, and Colorado, respectfully. Each plaintiff alleges the following violations of consumer protection laws from the states that they reside: (1) New York General Business Law § 349; (2) New York Business Law § 350; (3) Florida Deceptive and Unfair Trade Practices Act § 501.201 et seq.; (4) Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/2, et seq.; (5) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq.; (6) Texas Deceptive Trade Practices Act ("DTPA"). Tex. Bus. & Comm. Code §§ 17.41-.63; (7) Colorado Consumer Protection Act Colo. Rev. Stat. § 6-1-102(6); (8) Unjust Enrichment; and (9) Common law fraud, deceit, and/or misrepresentation.

the eighth cause of action listed in the FAC and common law fraud is the ninth cause of action listed.

DATED: November 1, 2021            LEWIS BRISBOIS BISGAARD & SMITH LLP


By:      /s/ Douglas C. Smith
         Douglas C. Smith
         Eric Y. Kizirian (Pro Hac Vice Forthcoming)
         Michael K. Grimaldi (Pro Hac Vice Forthcoming)

         Attorneys for Defendants
         Baker Mills, Inc. and Kodiak Cakes, LLC

I.     Introduction ..................................................................................................... 1

II.    Summary of Relevant Facts ............................................................................ 4

III.   Plaintiffs' Hypertechnical Labeling Claims Regarding the Calculation of Kodiak's Protein Quantities are Preempted by Federal Law. ............................................ 4

     A.    The Food, Drug, and Cosmetic Act Expressly Preempts Plaintiffs' Claims. .......... 4

     B.    Plaintiffs' Claims Are Also Impliedly Preempted Under 21 U.S.C. § 337(a). ..................................................................................... 7

IV.   Plaintiffs' Protein Labeling Claims Fall Under FDA's Primary Jurisdiction and Should Be Stayed Pending Guidance from FDA. ................................................ 9

V.    Plaintiffs' Claims are Implausible Because They Fail to Plead Facts Showing They Were Misled  by Truthful Protein Statements. ........................................... 10

     A.    Plaintiffs Have Not Plausibly Alleged Any Facts Showing *They* Were Misled by the Truthful Statement of the Protein *Quantity*. .................................. 10

     B.    Plaintiffs Have Not Plausibly Alleged Facts Showing *They* Were Misled by the Lack of a Percent Daily Value of Protein on the Nutrition Facts Panel Where the Panel Contained a Truthful Protein *Quantity* Statement. .......... 12

     C.    Plaintiffs Fail to Allege a "False Representation" as Required to Allege Fraud. ............................................................................... 13

     D.    Plaintiffs Fail to Allege Facts Showing Kodiak's Intent to Defraud/ Scienter,  Knowledge of Falsity/a Defect, or a Duty to Disclose. ........................ 14

     E.    Plaintiffs Can Never Allege Facts to Show Active Concealment.......................... 16

     F.    Plaintiffs Fail to Allege Any Facts Showing What Advertising, if any, They Saw and Relied on. ....................................................................... 16

VI.   Plaintiffs' Claims  Fail Because They Do Not Allege Injury Caused by Kodiak as They Received as Much Protein as Promised. ................................................... 17

VII.  Plaintiffs Failed to Plead Reliance on the Alleged Misrepresentations. ............................ 19

VIII. Plaintiffs' Request for Equitable Relief Should Be Dismissed Because Plaintiffs Fail to Allege a Lack of Adequacy of Legal Remedies. ................................................... 20

     A.    Plaintiffs Do Not and Cannot Sufficiently Allege the Requisite Inadequacy of Legal Remedies. ............................................................................ 20

B.     Plaintiffs Do Not Have Standing to Seek Injunctive Relief. .................................22

IX.    Plaintiffs' Unjust Enrichment Claims Likewise Fail Because Plaintiffs Received Exact Amount of Protein As Promised. ..............................................................................23

X.    Plaintiffs' 49-State Class Claims Fail Because (1) Plaintiffs Lack Standing and (2) Plaintiffs' Unjust Enrichment and Fraud Claims are Not Tethered to a Specific State Law. ..........................................................................................................................24

A.     Plaintiffs Lack Standing to Assert Class Claims on Behalf of the 49-State Class Based on Laws of States Where They Do Not Reside. ...............................24

B.     The Generic Common Law Fraud and Unjust Enrichment Claims Fail Because They Are Not Tethered to a Specific State Law. ....................................25

XI.    Conclusion ..................................................................................................................25

Page(s)

**Cases**

*Kearl v. Rausser,*
2007 U.S. Dist. LEXIS 12875 ....................................................................20, 22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................10, 12, 15, 25

*Atik v. Welch Foods, Inc.,*
2016 U.S. Dist. LEXIS 106497 (E.D.N.Y. 2016)................................12

*Baba v. HP Co.,*
2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ......................................14

*Baughman v. Martindale-Hubbell, Inc.,*
129 Ill. App. 3d 506 (Ill. App. 1984) .................................................18

*In re Bayer Corp.,*
701 Supp. 2d ........................................................................................9

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.,*
701 F. Supp. 2d 356 (E.D.N.Y. 2010) ................................................8

*Becerra v. Dr Pepper/Seven Up, Inc.,*
945 F.3d 1225 (9th Cir. 2019) ...........................................................17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................15

*Berrett v. Stevens,*
690 P.2d 553 (Utah 1984)..............................................................23, 24

*Blair v. Wachovia Mortg. Corp.,*
2012 U.S. Dist. LEXIS 33941 (M.D. Fla. 2012) ...............................16

*Blissard v. FCA US LLC,*
2018 U.S. Dist. LEXIS 201725 (C.D. Cal. Nov. 9, 2018)..................15

*Blodgett v. Martsch,*
590 P.2d 298 (Utah 1978).................................................................14

*Borchenko v. L'Oreal USA, Inc.,*
389 F. Supp. 3d 769 (C.D. Cal. 2019) .................................................7

*Brokaw v. Salt Lake County*,
    2007 U.S. Dist. LEXIS 56269 (D. Utah 2007) ....................................................22

*Bruaner v. MusclePharm Corp.*,
    2015 WL 4747941 (C.D. Cal. Aug. 11, 2015)..................................................10

*Buckman Co. v. Plaintiffs' Legal Committee*,
    531 U.S. 341 (2001).............................................................................................7

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ............................................................................23

*In re Carrier IQ Litig.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2016) ..............................................................25

*Carriuolo v. Gen. Motors Corp.*,
    823 F.3d 977, 2016 U.S. App. LEXIS 8962 (11th Cir. 2016) ..........................17

*Chi. Faucet Shoppe v. Nestle Waters N. Am., Inc.*,
    2014 U.S. Dist. LEXIS 16871 (N.D. Ill. Feb. 11, 2014) ....................................7

*Chong v. KIND LLC*,
    No. 3:21-cv-04528-RS ........................................................................................2

*Conrad v. Boiron, Inc.*,
    869 F.3d 536 (7th Cir. 2017) ............................................................................22

*Coroles v. Sabey*,
    2003 UT App 339 ..............................................................................................15

*Daimler v. Cuno*,
    547 U.S. 332 (2006)..........................................................................................24

*Daniel v. Tootsie Roll Indus., LLC*,
    2018 U.S. Dist. LEXIS 129143 (S.D.N.Y. 2018) ..............................................13

*De Bouse v. Bayer AG*,
    235 Ill. 2d 544 (2009) .......................................................................................15

*Delivery Serv. & Transfer Co. v. Heiner Equip. & Supply Co.*,
    635 P.2d 21 (Utah 1981) ...................................................................................20

*Doe v. Boys Clubs*,
    907 S.W.2d 472 (Tex. 1995)..............................................................................17

*Durnford v. MusclePharm Corp.*,
    907 F.3d 595 (9th Cir. 2018) ..........................................................................4, 7

*Egnell, Inc. v. Weniger*,
    418 N.E.2d 915 (Ill. App. 1981) .......................................................................17

*Erisman v. Overman*,
    358 P.2d 85 (Utah 1961) .................................................................................20

*Facio v. Jones*,
    929 F.2d 541 (10th Cir. 1991) ......................................................................22

*Fernandez v. Atkins Nutritionals, Inc.*,
    2018 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 3, 2018) .................................23

*Geske v. PNY Techs., Inc.*,
    503 F. Supp. 3d 687 (N.D. Ill. 2020) ...........................................................17

*Gold Standard, Inc. v. Getty Oil Co.*,
    915 P.2d 1060 (Utah 1996) ...........................................................................14

*Goodrich v. Alterra Mt. Co.*,
    2021 U.S. Dist. LEXIS 118676 (D. Colo. 2021) .........................................21

*Greisz v. Household Bank*
    (Ill.), 8 F. Supp. 2d 1031 (N.D. Ill. 1998) ...................................................22

*Guar. Tr. Co. of N.Y. v. York*,
    326 U.S. 99 (1945) ........................................................................................21

*Gubala v. CVS Pharmacy, Inc.*,
    2016 WL 1019794 (N.D. Ill. March 15, 2016) ..............................................7

*Gubala v. CVS Pharmacy, Inc.*,
    No. 14 C 9039, 2016 U.S. Dist. LEXIS 32759 (N.D. Ill. Mar. 15, 2016) ..............19

*Hall v. Walter*,
    969 P.2d 224 (Colo. 1998) ............................................................................17

*Hassell v. Uber Techs., Inc.*,
    No. 20-cv-04062-PJH, 2020 U.S. Dist. LEXIS 229310 (N.D. Cal. Dec. 7, 2020) ................................................................................................................21

*Herron v. Best Buy Co.*,
    924 F. Supp. 2d 1161 (E.D. Cal. Feb. 14, 2013) ..........................................16

*Jensen v. Cannon*,
    473 P.3d 637 (Utah 2020) .............................................................................16

*Johnson v. Atkins Nutritionals, Inc.*,
    2017 WL 6420199 (W.D. Mo. Mar. 29, 2017) ..............................................10

*Johnson v. Hermes Associates, Ltd.*,
    128 P.3d 1151 (Utah 2005) ...........................................................................20

*Kais v. Mansiana Ocean Residence*,
    2009 U.S. Dist. LEXIS 25417 (S.D. Fla. Mar. 25, 2009).........................21

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ......................................................12

*Krommenhock v. Post Foods, LLC*,
    255 F. Supp. 3d 938 (N.D. Cal. 2017) ........................................18, 19

*Leider v. Ralfe*,
    387 F. Supp. 2d 283 (S.D.N.Y. 2005)...........................................16

*Loreto v. Procter & Gamble Co.*,
    515 F. App'x 576 (6th Cir. 2013) ...................................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)....................................................................23

*McNair v. Synapse Grp., Inc.*,
    672 F.3d 213 (3d Cir. 2012)...........................................................22

*Minor v. Kodiak*,
    No. 4:20-cv-02901-RS ...........................................................2, 14

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016).........................................................22

*Pelman ex. Rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2nd Cir. 2005)........................................................17

*Perez v. Nideck Co.*,
    711 F.3d 1109 (9th Cir. 2013) ........................................................8

*Popp v. Cash Station, Inc.*,
    244 Ill. App. 3d 87 (Ill. App. 1992) ..........................................17, 18

*Porter v. NBTY, Inc.*,
    2016 WL 6948379 (N.D. Ill. Nov. 28, 2016) ................................7, 20

*Porter v. NBTY, Inc.*,
    2019 U.S. Dist. LEXIS 190495 (N.D. Ill. Nov. 4, 2019).....................19

*Randolph v. J.M. Smucker Co.*,
    303 F.R.D. 679 (S.D. Fla. 2014) .....................................................12

*S. Title Guar. Co., Inc. v. Bethers*,
    761 P.2d 951 (Utah Ct. App. 1988) ..............................................24

*S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*,
    425 F.3d 735 (10th Cir. 2005) .........................................................9

*In re Samsung Litig.*,
2018 WL 1576457 (N.D. Cal. 2018) ................................................................25

*In re Santa Fe Natural Tobacco Litig.*,
288 F. Supp. 3d 1087 (D.N.M. 2017) ...............................................................23

*Schertzer v. Bank of Am.*,
445 F. Supp. 3d 1058 (S.D. Cal. 2020) .............................................................24

*Sciacca v. Apple, Inc.*,
362 F. Supp. 3d 787 (N.D. Cal. 2019) ..............................................................15

*Small v. Lorillard Tobacco Co.*,
252 A.D.2d 1 (N.Y. 1998) ................................................................................16

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ......................................................................20, 21

*Spokeo v. Robins*,
136 S. Ct. 1540 (2016)......................................................................................24

*Stutman v. Chem. Bank.*
95 N.Y.2d 24 (N.Y. 2000) ................................................................................17

*In re Subaru Battery Drain Prods. Liab. Litig.*,
2021 U.S. Dist. LEXIS 62373 (D.N.J. 2021) ...................................................21

*Thomas v. Costco Wholsale Corp.*,
2014 WL 1323192 (N.D. Cal. Mar. 31, 2014)...................................................10

*TON Servs., Inc. v. Qwest Corp.*,
493 F.3d 1225 (10th Cir. 2007) ..........................................................................9

*Ulrich v. Probalance, Inc.*,
2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) ......................................................7

*Ulrich v. Probalance, Inc.*,
No. 16 C 10488, 2017 U.S. Dist. LEXIS 132202 (N.D. Ill. Aug. 18, 2017) .........19

*Verzani v. Costco Corp.*,
2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F. App'x 29 (2d Cir.
2011) ...................................................................................................................8

*White v. DaimlerChrysler Corp.*,
368 Ill. App. 3d 278 (Ill. 2006)........................................................................21

*Williams v. Apple, Inc.*,
2020 U.S. Dist. LEXIS 215046 (N.D. Cal. Nov. 17, 2020)................................21

*Wyeth v. Levine,*
    555 U.S. 555 (2009)............................................................7

*Yellow Group LLC v. Uber Techs. Inc.,*
    2014 U.S. Dist. LEXIS 94093 (N.D. Ill. 2014) ...............................18

*Yumul v. Smart Balance, Inc.,*
    2011 WL 1045555 (C.D. Cal. Mar. 14, 2011)................................4

*Zwerin v. Maccabees Mut. Life Ins. Co.,*
    1997 U.S. App. LEXIS 7916 (10th Cir. 1997) ...............................13

**Statutes**

21 U.S.C. § 301.........................................................................9

21 U.S.C. § 337.......................................................................7, 9

21 U.S.C. § 343.........................................................3,4, 7, 8, 9, 10

Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101.................17

Colo. Rev. Stat. § 6-1-113 ........................................................21

Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201..........16, 17, 21

Food, Drug, and Cosmetic Act ....................................................4

Illinois Consumer Fraud Act.................................................15, 1, 19, 21

Illinois Uniform Deceptive Trade Practices Act.............................15, 17, 22

N.Y. Gen. Bus. Law.................................................................17

N.Y. Gen. Bus. Law § 350..........................................................16

N.Y. Gen. Bus. Law § 349..........................................................21

Nutrition Labeling and Education Act..............................................9

Texas Deceptive Trade Practices & Consumer Protection Act ..................17

Tex. Bus. & Com. Code Ann. § 17.50.............................................21

**Regulations and Rules**

21 C.F.R. § 100.1.....................................................................5

21 C.F.R. §101.9.............................................................2, 3, 5, 6, 11

21 C.F.R. § 101.13)..................................................................3

Fed. R. Civ. Proc. 9(b) ........................................................................................14, 16

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................4

## I.    INTRODUCTION

Kodiak began as a family-owned company based in Utah.  It was born out of an eight-year old's dreams to sell his mother's high quality flapjack mix to the masses—a mix he first sold out of a red wagon in paper bags.  Kodiak's flapjack mixes, which are based on a family recipe, are quality versions of the mass-produced pancake-and-waffle mixes.  It's two most prominent slogans, which are a foundation for Kodiak's products, are "WHOLE GRAINS TASTE BETTER" and "100% WHOLE GRAINS." Kodiak does indeed use better ingredients.[2]

 

Plaintiffs ignore Kodiak's central claims that its products use better ingredients like whole grains.  The five plaintiffs, who hail from different states, instead manufacture a no-injury suit based on alleged hyper-technical violations of an obscure FDA regulation that they misinterpret and that ultimately does not provide for a private right of action.  First, they argue "amino acid content testing" reveals the Kodiak products contain approximately 17% fewer grams of protein than claimed.  First Am. Compl. ("FAC")  ¶¶ 4, 49. The FDA does not require this testing to measure the grams of protein in a product.  Second, they claim Kodiak failed to include the percent daily value of the protein in the Nutrition Facts panel.  FAC ¶ 47.  It's doubtful this is even an

---

[2] Attached as Exhibits 1 and 2 to the Request for Judicial Notice are example flapjack mix boxes.

actual requirement for protein, but even assuming it were, these plaintiffs who bought the products several times over clearly saw the percent daily value was not listed and did not care. Undeterred by these obstacles, plaintiffs from five states expand on these twin theories to assert nine overlapping claims on behalf of putative class members who reside in *forty-nine* states. FAC ¶¶ 184-198. All of the claims in the FAC are fatally flawed and must be dismissed.

*First*, plaintiffs' counsel filed an identical action in the Northern District of California against Kodiak, *Minor v. Kodiak*, No. 4:20-cv-02901-RS ("Minor"). The same counsel filed another case, grounded in the same flawed theories, against KIND, *Chong v. KIND LLC*, No. 3:21-cv-04528-RS ("*KIND*"). The Hon. Judge Seeborg, who is overseeing both actions, initially denied Kodiak's motion based on preemption. The Court recently noted in *Chong* that his ruling in *Minor* on preemption "may [have] rest[ed] on a mistaken understanding that the language in 21 C.F.R. § 101.9(c)(7)(ii) endorsed use of the amino acid method, as opposed merely to calling for application of PDCAAS." RJN Ex. 9 at 3:1-4. Kodiak incorporates KIND'S motion-to-dismiss briefing as it shows why plaintiffs' bid here to rewrite the FDA rules are preempted and fail. RJN Exs. 7-10.

*Second*, it is not the case that Kodiak overpromised and underdelivered on *total* protein in its products. Indeed, plaintiffs do not dispute that Kodiak *truthfully* represented the total amount of protein in its products under the FDA-approved nitrogen testing method. The issue here is whether Kodiak should have measured the *same* amount of total protein in the products using a different test that yields the amount of *digestible* protein in the products. Yet plaintiffs allege no facts that plausibly suggest they thought, *at the time of purchase*, Kodiak's protein statements represented the digestible protein (rather than the total protein). In other words, plaintiffs admit Kodiak's labeling reflected *the accurate amount of per serving grams of protein, as calculated by*

*the nitrogen method.* The FDA regulations mandate the amount of total protein per serving appear on the label. 21 U.S.C. § 343(q)(1)(D). This information must appear on the Nutrition Facts panel, which is regulated under 21 C.F.R. § 101.9. The nutrition information from the box can also be placed elsewhere on the food label. 21 C.F.R. § 101.13(b), (c). The regulations require the total protein quantity per serving to be measured by the nitrogen method, *i.e.*, it must be "calculated on the basis of the factor 6.25 times the nitrogen content of the food." 21 C.F.R. §101.9(c)(7). The total amount of protein per serving must be the same on the front of the box (if stated) and on the Nutrition Facts panel. 21 C.F.R. § 101.13(o). Likewise, the FDA acknowledges that protein labels generally do not list %DV and suggests to "use the number of grams (g) as a guide."[3] Plaintiffs do not dispute that that FDA recognizes the nitrogen method as a reliable testing method to calculate the protein quantity on nearly every product such as dairy, beans, nuts, and meats. Thus, the FDA-required nitrogen method provides approved information as to the total grams of protein.

*Third*, plaintiffs' hyper-technical theory that they were misled because protein content was not calculated using their preferred Protein Digestibility Corrected Amino Acid Score ("PDCAAS") is unsound. Kodiak never advertised the digestibility of the protein content, nor the %DV of protein. The only advertising statement plaintiffs reference is that the products are "protein packed," a claim they do not dispute is accurate. Plaintiffs disregard that Kodiak provided a *truthful statement of protein quantity* calculated using the FDA-approved method. Critically, they do not allege that *at the time of purchase* they believed the protein content Kodiak represented was calculated using PDCAAS. Nor do plaintiffs claim they compared Kodiak to any other

---

[3] FAC n.1, relying on *Interactive Nutrition Facts Label – Protein*, *FDA* (Mar. 2020), https://www.accessdata.fda.gov/scripts/interactivenutritionfactslabel/assets/InteractiveNFL_Protein_March2020.pdf ("The Nutrition Facts label on food and beverage packages shows the amount in grams (g) of protein per serving of the food. Protein generally has no % Daily Value (%DV) listed on the label, so use the number of grams (g) as a guide."). Attached to RJN as Exhibit 6.

"correctly labeled" product. Plaintiffs have thus not alleged a viable claim of deception at the time

of purchase. Plaintiffs' failure to plead facts to support their conclusions requires dismissal.

## II.    SUMMARY OF RELEVANT FACTS

Kodiak sells baking mixes for flapjacks/waffles, baking mixes, oatmeal, snacks; frozen

versions of the flapjacks/waffles; and microwavable cups.  FAC ¶ 64.  Kodiak's products are made

from whole grains and contain added protein.  Plaintiffs allege they purchased Kodiak's products

from various stores, but do not specifically allege all the products they purchased.  FAC ¶ 65, 72,

79, 86, 93, 100.  They allege almost no facts about their purchase decisions or how the purported

discrepancy in protein content based on a non-FDA approved protein testing caused them any

issues.  Nor do they allege facts about the "testing" they did post-purchase, much less that they

knew about the different ways protein content is tested at the time of purchase.  Plaintiffs do not

claim they compared Kodiak's products to other "correctly labeled" products that contain added

protein pre-purchase and were misled.  The FAC is an unadorned claim of harm—devoid of a

factual foundation establishing injury, deception, or any misrepresentation as to protein quantity.

## III.   PLAINTIFFS' HYPERTECHNICAL LABELING CLAIMS REGARDING THE CALCULATION OF KODIAK'S PROTEIN QUANTITIES ARE PREEMPTED BY FEDERAL LAW.

### A.    The Food, Drug, and Cosmetic Act Expressly Preempts Plaintiffs' Claims.

Plaintiffs attempt to impose upon Kodiak labeling requirements that are greater than those

the FDCA requires.  *See* 21 U.S.C. § 343-1(a). Their claims are preempted.  And "[i]f a claim is

preempted by federal law, it fails to state a claim upon which a relief can be granted under Rule

12(b)(6)." *Yumul v. Smart Balance, Inc.*, 2011 WL 1045555, at *5 (C.D. Cal. Mar. 14, 2011).

Preemption is found where, as here, plaintiffs' claims seek to require something that the FDCA

does not. *Id.* at 603. *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 (9th Cir. 2018).  When

the "state requirement *directly or indirectly* imposes obligations or contains provisions concerning

4

the composition or labeling of food, or concerning a food container, that (i) are not imposed by or contained in the applicable provision (including any implementing regulation) of Section 401 or 403 of the act; or (ii) **differ** from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of Section 401 or 403 of the Act," then the regulations are "not identical to" the FDCA. 21 C.F.R. § 100.1(c)(4)(i)-(ii).

The FDA mandates the total *amount/quantity* of protein by weight be calculated using the nitrogen method—not the "amino acid method" that plaintiffs invoke—and does not require the total amount of protein by weight be adjusted for digestibility under any circumstances. 21 C.F.R. § 101.9(c)(7). Similarly, a PDCAAS digestibility adjustment must only be performed in connection with the percent daily value of protein calculation, and is *only* ever expressed as a percentage of daily value. 21 C.F.R. § 101.9(c)(7)(i). A "protein value" expressed as part of the percent daily value appears only on the NFP, not elsewhere on the label in connection with a protein claim. *Id.* Plaintiffs allege Kodiak makes deceptive front-of-pack protein *content* claims. FAC ¶ 47. They assert Kodiak's protein claims were deceptive (1) because the grams of protein on its labels was not calculated using the "amino acid content testing" (FAC ¶¶ 4, 49) and (2) because this number was not further adjusted for digestibility using PDCAAS. FAC ¶ 47. These twin contentions are both wrong and provide no basis for any claim.

First, Kodiak does not make protein *content* claims. Rather, Kodiak provides an accurate *quantitative statement* that does not otherwise "characterize" the nutrient level.[4] "14 g protein" on the front of the box does not characterize the level of protein and therefore is not a nutrient content

---

[4] RJN Ex. 11, FDA, *Label Claims for Conventional Foods*, https://www.fda.gov/food/food-labeling-nutrition/label-claims-conventional-foods-and-dietary-supplements ("An accurate quantitative statement (e.g., 200 mg of sodium) that does not otherwise 'characterize' the nutrient level may be used to describe the amount of a nutrient present.") .

claim, but rather a factual statement about the amount of protein. Further, contrary to plaintiffs' assertions, the FDA regulations require the total protein quantity per serving to be measured by the nitrogen method. 21 C.F.R. §101.9(c)(7). Significantly, FDA also does not require the total amount of protein by weight be adjusted for digestibility. *Id.* Requiring Kodiak to use the amino acid test instead of the only FDA-approved nitrogen test to measure protein quantity, and adjusting this number for digestibility using PDCAAS scoring, imposes inconsistent and additional requirements upon Kodiak that no law requires. Plaintiffs' counsel has admitted that the nitrogen method is the only FDA-approved method of measuring total protein quantity (RJN Ex. 10 at 2:3-5, KIND Response Brief), and that the "amino acid testing" they claim shows Kodiak shorted the protein is not FDA approved and fundamentally different from PDCAAS testing. RJN Ex. 9 at 2:17-18, KIND Order.

In short, plaintiffs' suit attempts to amend the regs and if adopted by this Court, will lead to inconsistent results where a food label will have two different statements of the total amount of protein per serving between the front-of-pack and the Nutrition Facts panel. *See* RJN Ex. 8, KIND FDA email (confirming FDA regulations require front-of-pack protein quantity claims to be *consistent* with protein quantity claims in Nutrition Facts box).

Plaintiffs' theory would also lead to bizarre results. Let's assume there are two products: Product A listing "8g of protein" in NFP and Product B listing "10g of protein." If Product B has this protein claim anywhere else on its label, it would be required to adjust that amount using PDCAAS, and then use the PDCAAS adjusted amount (e.g. 6 g of protein) on the product label. This discrepancy between protein quantities in the NFP and the rest of the product label will confuse the consumers. It will also falsely lead them to believe that Product A has *more total quantity of protein* than Product B when it does not. These requirements conflict with the FDCA

and are preempted. *Durnford,* 907 F.3d at 601-03 (requiring protein statements in the NFP to be adjusted for digestibility is in direct conflict with FDA regs).[5] *See* RJN Ex. 7 at 9, KIND motion.

### B.   Plaintiffs' Claims Are Also Impliedly Preempted Under 21 U.S.C. § 337(a).

Plaintiffs' claims are preempted because they seek to enforce FDA regulations through state law.  But there is no private right of action under the FDCA or its regs.  Any proceedings under the FDCA "shall be by and in the *name* of the United States."  *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 772-73 (C.D. Cal. 2019) (finding "21 U.S.C. § 337(a) *implicitly preempts any private right of action to enforce the FDCA*") (emphasis added).  State laws are preempted where, as here, they are being used to impose requirements that contravene or are inconsistent with FDCA requirements. *Wyeth v. Levine*, 555 U.S. 555, 575-76 (2009).  "[S]tate law cannot be used to fill what private litigants perceive to be gaps in the regulatory requirements imposed by federal law." *Chi. Faucet Shoppe v. Nestle Waters N. Am., Inc.*, 2014 U.S. Dist. LEXIS 16871, *16 (N.D. Ill. Feb. 11, 2014).

Plaintiffs' claims are preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 352 (2001).  In *Buckman*, the Supreme Court held the plaintiffs' "fraud-on-the-FDA" claims were impliedly preempted by the FDCA because they conflicted with the federal statutory scheme.  *Id*.  There is a "*narrow gap*" through which a state-law claim must fit to escape

---

[5] *See also Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *4 (N.D. Ill. Aug. 18, 2017) ("the FDCA and its implementing regulations do not strictly require pure protein content claims…to be calculated according to the PDCAAS method"); *Porter v. NBTY, Inc.*, 2016 WL 6948379, at *5 (N.D. Ill. Nov. 28, 2016)("[P]rotein content may be calculated using the nitrogen method, but it also must be stated as a percentage of the Daily Reference Value using the corrected amount of protein. This alternative to the nitrogen method is only required in the statement of percentage; it is not required for statements of absolute protein content."); *Gubala v. CVS Pharmacy, Inc.*, 2016 WL 1019794, at *1, 12 (N.D. Ill. March 15, 2016)(defendant "was authorized by federal regulation to calculate protein content using the nitrogen method," including for protein claims.)

preemption by the FDCA: "[t]he plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA." *Perez v. Nideck Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013). Moreover, "for a state-law claim to survive, then, the claim must be premised on conduct that both (1) violates the FDCA and (2) would give rise to a recovery under state law even *in the absence of the FDCA." In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 369 (E.D.N.Y. 2010); *see also Perez*, 711 F.3d at 1117-19 (state law claims based on allegations that defendants had not informed the plaintiff of the FDA status of a medical device were preempted because if the FDA did not exist, there would be no FDA status, and the plaintiff's fraud-by-omission clause would have no basis).

Plaintiffs' claims similarly fail because they assert state law claims that seek to enforce the FDCA regulations based upon alleged mislabeling of the products.  FAC ¶ 60.  But the FDCA prohibits the misbranding of food or drinks. 21 U.S.C. § 343(a).  Plaintiffs' claims do not exist independently of FDA protein regulations.  Plaintiffs' attempt to disguise these claims in the form of various state laws does not change their substance. *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 579 (6th Cir. 2013) ("The statute's public enforcement mechanism is thwarted if savvy plaintiffs can label arising under a state law for which there exists a private enforcement mechanism a claim that in substance," even if not form, "seeks to enforce the FDCA"). Furthermore, plaintiffs explicitly request relief which "lies squarely within the province of the FDA." *Farm Raised Salmon Cases*, 175 P.3d 1170 (Cal. 2008).  Plaintiffs' theory of deception based on allegations that the total amount of protein must be calculated using "amino acid content testing" and requiring Kodiak to include the percent daily value of the protein in the NFP are entirely derivative of an alleged FDCA violation. *Verzani v. Costco Corp.*, 2010 WL 3911499, at

*3 (S.D.N.Y. Sept. 28, 2010) (allegations of FDCA labeling violations indicated a purpose "to privately enforce the alleged violations of the FDCA, rather than to bring a [state-law] claim for unfair and deceptive business practices."), *aff'd*, 432 F. App'x 29 (2d Cir. 2011). In the absence of the FDA regulations, plaintiffs' state-law claims would have failed in their entirety because the labels are otherwise accurate. *In re Bayer Corp.,* 701 Supp. 2d at 369.  Plaintiffs' state-law misleading labeling claims are thus preempted by 21 U.S.C. § 337(a). RJN Ex. 7 at 17, KIND Mot.

### IV. PLAINTIFFS' PROTEIN LABELING CLAIMS FALL UNDER FDA'S PRIMARY JURISDICTION AND SHOULD BE STAYED PENDING GUIDANCE FROM FDA.

Primary jurisdiction is a prudential doctrine designed to allocate authority between courts and administrative agencies. *S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 750 (10th Cir. 2005). The doctrine specifically applies to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238-39 (10th Cir. 2007).  A district court's decision to invoke the primary jurisdiction doctrine requires it to consider whether the issues of fact in the case: "(1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency." *Id.*  Here, the FDA has regulatory authority over food labeling. *See* 21 U.S.C. § 301 *et seq.* The FDCA sets forth regulations to ensure that food is labeled so as to not mislead consumers. 21 U.S.C. 343 § (a)(1) (deeming food misbranded if "its labeling is false or misleading in any particular"). Congress has indicated that food labeling enforcement requires the FDA's expertise and uniformity in administration. *See* H.R. Rep. No. 101-538, at 7, *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337 (Congress passed the Nutrition Labeling and Education Act to "clarify and to strengthen" the FDA's "legal authority to require nutrition labeling on foods and to establish the circumstances under which claims may be made about nutrients in foods"). Further,

"no State or political subdivision of a State may directly or indirectly establish . . . any requirement for the labeling of food that is not identical to the [FDCA]." 21 U.S.C. § 343-1(a).

Here, the allegations do not involve simple mislabeling claims. Plaintiffs' asserted theory of liability implicates technical FDA regulations and complex issues regarding complex testing methods for protein content. FAC ¶¶ 39-40. These types of issues are best resolved through the FDA's expertise,[6] especially if the FDA's protein labeling regulations are deemed ambiguous. The scientific issues of fact here are not within the conventional experience of courts; they require the exercise of administrative discretion, and they require uniformity/consistency in the regulation of the food labeling entrusted to FDA. Thus, if the Court does not find the claims are preempted, the action should be stayed pending FDA guidance.

## V. PLAINTIFFS' CLAIMS ARE IMPLAUSIBLE BECAUSE THEY FAIL TO PLEAD FACTS SHOWING THEY WERE MISLED BY TRUTHFUL PROTEIN STATEMENTS.

### A. Plaintiffs Have Not Plausibly Alleged Any Facts Showing *They* Were Misled by the Truthful Statement of the Protein *Quantity*.

Even a cursory review of plaintiffs' theories shows they are based only on "naked assertions" that are "devoid of further factual enhancement" and implausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, plaintiffs admit that the front-of-box stated *quantity* of protein and the protein quantity on the Nutrition Facts panel is accurate. They do not dispute that Kodiak

---

[6] *See e.g., Colella v. Atkins Nutritionals, Inc.*, 348 D. Supp. 3d 120, 139 (E.D.N.Y. 2018)(applying primary jurisdiction doctrine to stay claims regarding defendant's "Net Carbs figures and calculations" label description and "Only Xg Net Carbs" statements); *Johnson v. Atkins Nutritionals, Inc.,* 2017 WL 6420199, at *2, 9 (W.D. Mo. Mar. 29, 2017) (court invoked primary jurisdiction doctrine when allegations were based on defendant's improper calculation method)*cf. Bruaner v. MusclePharm Corp.*, 2015 WL 4747941, at *4 (C.D. Cal. Aug. 11, 2015) (suggesting the primary jurisdiction doctrine is applicable to claims that would require the court "to opine on the technicalities of testing protein content in food or supplements"); *Thomas v. Costco Wholsale Corp.*, 2014 WL 1323192, at *10 (N.D. Cal. Mar. 31, 2014) ("Where determination of a plaintiff's claim would require a court to decide an issue committed to the FDA's expertise without a clear indication of how the FDA would view the issue, courts of this district have found that dismissal or stay under the primary jurisdiction doctrine is appropriate.").

calculated protein quantity using the industry-standard nitrogen method—the same method used to calculate protein on nearly every other product. 21 C.F.R. § 101.9(c)(7). According to the FDA guidance plaintiffs rely on, consumers can and should generally use the number of grams of protein calculated via the nitrogen method—given that nearly every product uses this method to calculate protein quantity. RJN Ex.6.

Plaintiffs do not allege facts that show they were misled by the objectively truthful amount of protein calculated using the typical method. They do not point to any representation Kodiak made regarding the calculation of protein or the digestibility of protein. While plaintiffs claim Kodiak should have calculated the protein using PDCAAS, they do not allege *any facts* regarding how the lack of this score affected their pre-purchase decision making. Plaintiffs do not even allege they knew about PDCAAS scores at the time of purchase. Having pled no facts that show plaintiffs' expectations on how the protein-content representations were calculated, plaintiffs have not pled any misrepresentation, much less their reliance on one.

Nor do plaintiffs claim that at the time of purchasing they compared the Kodiak products to similar "correctly labeled" products with protein-content representations. They did not allege they compared the Kodiak products to products with a PDCAAS score ultimately picking the Kodiak product for its higher amount of protein. Plaintiffs never claim they tried to make an apples-to-apples comparison between products that used the same protein calculation.

To state a plausible claim for misrepresentation, plaintiffs would have to allege (1) they understood technical differences between nitrogen testing and PDCAAS testing at the time of each purchase; (2) they believed and relied on a "representation" the protein content was tested via PDCAAS; (3) they compared the Kodiak product to a "correctly labeled" similar product and purchased Kodiak for its higher protein number; (4) they ultimately purchased the product thinking

they received the protein content based on PDCAAS; and (5) their purchased products had a substantial difference between the PDCAAS and the nitrogen score. Plaintiffs did not and could not make these allegations.

Plaintiffs' claims do not "suffice" since "[they] tender[] naked assertions." *Iqbal*, 556 U.S. at 680. This alleged hyper-technical labeling violation based on a protein-content calculation that plaintiffs do not even claim they knew about could not have affected plaintiffs' purchases. Even so, plaintiffs cannot just allege unsupported assumptions. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (to determine facial plausibility the court disregards conclusory statements and looks only to the remaining factual allegations). Besides, there are no facts to suggest the "reasonable consumer" knows about, much less is focused on, differences in protein-testing methods to the degree that protein representations based on one testing method versus another can mislead them. *Atik v. Welch Foods, Inc.*, 2016 U.S. Dist. LEXIS 106497, at * 22 (E.D.N.Y. 2016); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 692 (S.D. Fla. 2014). Plaintiffs received the exact quantity of protein they thought they were purchasing.

### B. Plaintiffs Have Not Plausibly Alleged Facts Showing *They* Were Misled by the Lack of a Percent Daily Value of Protein on the Nutrition Facts Panel Where the Panel Contained a Truthful Protein *Quantity* Statement.

Plaintiffs' second liability theory also lacks factual support. Plaintiffs claim Kodiak should have included the "required percent daily value of protein in the nutrition facts panel." FAC ¶ 6. But plaintiffs do not allege a *single fact* about their experience with the percent daily value, let alone facts showing how they were *misled* by the lack of a percent daily value of protein. Plaintiffs do not claim they tried to compare the percent daily value of Kodiak products to other similar products with a %DV of protein. Further, they continued to buy the products over time despite knowing the %DV was not on the NFP. Plaintiffs have no claim of deception here since they failed to allege (1) reliance on the lack of a %DV or (2) any expectations as to the %DV.

Per the FDA guidelines, the percent daily value of protein is generally "not mandatory" in part because "protein intake is not a public health concern for adults and children over 4."[7] The FDA suggests that consumers "use the number of grams (g) [of protein] as a guide" for their dietary choices. *See*, *supra*, n.; RJN Ex. 6; *see also Daniel v. Tootsie Roll Indus., LLC*, 2018 U.S. Dist. LEXIS 129143, at *32, *37 (S.D.N.Y. 2018) (dismissing plaintiffs' NYGBL 349 and 350 claims because a reasonable consumer would not be misled about the amount of candy contained within the package when "the weight of the candy enclosed is prominently displayed on the front"). Likewise, the labels here disclosed correct quantity of protein according to the nitrogen method. In short, while plaintiffs complain that the %DV should have been on the label, they do not allege any facts showing how the lack of percent daily value caused them to purchase any products or otherwise influenced their purchasing decision. They have not alleged a cognizable theory showing how the missing %DV constitutes an actionable omission that harmed them.

C.     **Plaintiffs Fail to Allege a "False Representation" as Required to Allege Fraud.**

Plaintiffs have not alleged a required element of their fraud claim—a "*false* representation." *Zwerin v. Maccabees Mut. Life Ins. Co.*, 1997 U.S. App. LEXIS 7916, at *8 (10th Cir. 1997). As the FDA recognizes, the nitrogen method is the standard method used to calculate protein. Indeed, both the PDCAAS and nitrogen methods provide approved information—similar to how there can be multiple accurate but different tests used in other scientific fields.

There is no dispute that Kodiak's products contain the amount of protein stated on the label. Plaintiffs do not claim Kodiak promised added protein but did not include it. Because plaintiffs do not dispute and thus admit the protein content as calculated by the nitrogen testing method is

---

[7] RJN Ex. 5, *A Food Labeling Guide*, *FDA* (Jan. 2013), https://www.*FDA* .gov/files/food/published/Food-Labeling-Guide-%28PDF%29.pdf.

correct, they have not alleged any facts showing that Kodiak made an actionable "false representation." Plaintiffs' ipse dixit and conclusions do not cut it under Rule 9(b).

### D. Plaintiffs Fail to Allege Facts Showing Kodiak's Intent to Defraud/ Scienter, Knowledge of Falsity/a Defect, or a Duty to Disclose.

Plaintiffs fail to allege the other elements of their claims, as well as facts in support. In Utah, for example, a party bringing fraud claims must allege:(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly…, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage. *Gold Standard, Inc. v. Getty Oil Co.,* 915 P.2d 1060, 1066-67 (Utah 1996). The FAC fails to make threshold showing on many of these elements.

*First*, plaintiffs do not allege facts showing knowledge of falsity, scienter or exclusive knowledge. *Blodgett v. Martsch*, 590 P.2d 298, 302 (Utah 1978) ("plaintiff must show the representations were known to be false or were made when the representor knew he had insufficient information"). As stated above, there is no "false" representation. Plaintiffs merely speculate that Kodiak "knew, or should have known of the composition of the Products, and knew or should have known that the Products did not contain or provide the amount of protein represented on the label." FAC ¶ 192. But plaintiffs do not allege any facts to show *Kodiak* had knowledge of an issue—for example, by way of a single consumer complaint, an online forum post, or FDA investigation—that pre-dates their product purchase and would confer knowledge of a problem to Kodiak.[8] Plaintiffs also did not allege any facts establishing that Kodiak *intended* to

---

[8] *Cf. Baba v. HP Co.*, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("[a]wareness of a few customer complaints . . . does not establish knowledge of an alleged defect.").

14

trick consumers into thinking the products contained more protein. Plaintiffs have already admitted that their complaint is not accurate and the regulations do not state that a protein content labeled on the front of a package must calculate those grams using the made-up "amino acid method." RJN Ex. 10 at 2:3-5, KIND Response Brief. Instead, plaintiffs offer pages of conclusions. FAC ¶ 191. Courts dismiss based on similar conclusions.[9]

*Second*, plaintiffs fail to allege any facts showing intent to defraud. Plaintiffs again offer just conclusions (*see* FAC ¶¶ 190, 195), which cannot be credited. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleading a fraud claim without specifying the facts upon which it is based "essentially dumps upon the trial court … the burden of sifting through the hundreds of paragraphs of alleged facts to ascertain whether Plaintiffs have 'alleged … facts necessary to make all their elements of fraud." *Coroles v. Sabey*, 2003 UT App 339, *P27 (Utah 2003)).

Plaintiffs here merely allege legal *conclusions* that the "[d]efendants have fraudulently and deceptively informed Plaintiffs that the Protein contains more grams of protein than they actually provide" and Kodiak "fail[ed] to list the Protein DRV of protein, as it was required to do so." FAC ¶ 190. These are "naked assertions." *Ashcroft*, 556 U.S. at 680.[10]

---

[9] *E.g.*, *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 800 (N.D. Cal. 2019) (granting motion to dismiss and finding that plaintiff's allegations do not show Apple's knowledge of the alleged defect because plaintiff "fails to explain how Apple's alleged knowledge of the alleged defect in the First Generation Watches relates to knowledge of the alleged defect in the Series 1, 2, and 3 Watches."); *Blissard v. FCA US LLC*, 2018 U.S. Dist. LEXIS 201725, at *13 (C.D. Cal. Nov. 9, 2018) (finding allegations of exclusive knowledge insufficient where the plaintiffs made speculative allegations about Defendant's testing and records and relied on consumer complaints on third-party websites or to NHTSA but the plaintiffs "concede that they have not identified any complaint that predates [one named plaintiff's] purchase.").

[10] Likewise, plaintiffs' Illinois Consumer Fraud Act claims fail because they do not allege that Kodiak knew any of its statements were false, much less that they were made with intent to defraud plaintiff or anyone else. *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 550 (2009)(required elements "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception."). Plaintiffs' Illinois

### E. Plaintiffs Can Never Allege Facts to Show Active Concealment.

Active concealment requires an affirmative act "showing of 'intent to mislead.'" *Jensen v. Cannon*, 473 P.3d 637, 652 (Utah 2020). Here, plaintiffs have not and could never allege facts showing Kodiak actively suppressed any information or intended to mislead consumers. Plaintiffs merely allege the conclusion of "active concealment in representing that the Products contain and provide specific amounts of protein per serving." FAC ¶ 51. Plaintiffs' active concealment claim must be dismissed. *See Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. Feb. 14, 2013) (granting motion to dismiss active concealment theory based on assertion that defendants "actively concealed material facts.")

### F. Plaintiffs Fail to Allege Any Facts Showing What Advertising, if any, They Saw and Relied on.

Under N.Y. Gen. Bus. Law § 350, the plaintiff must "point to [a] specific advertisement or public pronouncement upon which he or she relied." *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005); *see, e.g.*, *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 600 (N.Y. 1998) (holding that "plaintiffs do not point to any specific advertisement or public pronouncement by [De Beers] which was undoubtedly seen by all class members."). Here, the gravamen of the case is the alleged deceptiveness of the front-of-pack protein claims. Although Plaintiffs also generically refer to "other forms of advertising and marketing" (FAC ¶ 52) and statements such as "protein packed" (FAC ¶ 54), they fail to identify these specific advertisements. More importantly, plaintiffs fail to state whether they saw these advertisements or relied on them. Therefore, plaintiffs' deceptive advertising claims fail.

---

Uniform Deceptive Trade Practices Act claim is also sound in fraud and must meet the heightened pleading standards of Rule 9(b). *See, e.g., Blair v. Wachovia Mortg. Corp.*, 2012 U.S. Dist. LEXIS 33941, at *3 (M.D. Fla. 2012) ("While federal district courts have split as to whether FDUTPA claims are subject to Rule 9(b), this Court concludes that where the gravamen of the claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) would apply.").

## VI. PLAINTIFFS' CLAIMS FAIL BECAUSE THEY DO NOT ALLEGE INJURY CAUSED BY KODIAK AS THEY RECEIVED AS MUCH PROTEIN AS PROMISED.

Even if plaintiffs could cure the FAC's many defects, they have not alleged any injuries caused by Kodiak's truthful protein statements. To have statutory standing to pursue plaintiffs' consumer protection claims, plaintiffs must prove that they suffered injury as a result of the deceptive act.[11] Plaintiffs have not identified a false representation, nor have they alleged that Kodiak advertised the digestibility or any other facts regarding the protein content. Plaintiffs do not dispute that Kodiak's products contain a significant amount of protein in comparison to other competitor products. They fail to allege a single other comparable product with whole grains and added protein that they would have purchased at a lower price. FAC ¶67. Plaintiffs thus can only offer "unreasonable assumptions … pulled from thin air" that they were in some way overcharged. *Becerra v. Dr Pepper/Seven Up, Inc.,* 945 F.3d 1225, 1229-30 (9th Cir. 2019).

Kodiak made no false representation because the protein content was calculated correctly by the nitrogen method—the FAC does not allege otherwise. The FAC relies on sparse allegations

---

[11]Under N.Y. Gen. Bus. Law, plaintiffs must prove that the plaintiff suffered injury as a result of the deceptive act. *Stutman v. Chem. Bank.* 95 N.Y.2d 24, 29 (N.Y. 2000); *Pelman ex. Rel. Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2nd Cir. 2005). The elements of a claim under the Florida Unfair and Deceptive Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 et seq., are (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Corp.,* 823 F.3d 977, 2016 U.S. App. LEXIS 8962, at *3 (11th Cir. 2016). The Illinois Uniform Deceptive Trade Practices Act requires the plaintiff to "allege facts which would indicate that he is 'likely to be damages in the future. *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 99 (Ill. App. 1992). *See also Egnell, Inc. v. Weniger*, 418 N.E.2d 915 (Ill. App. 1981). Likewise, "the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) requires a plaintiff to prove actual damage to the plaintiff that is a result of the deception." *Geske v. PNY Techs., Inc*., 503 F. Supp. 3d 687, 704 (N.D. Ill. 2020). The Texas Deceptive Trade Practices & Consumer Protection Act ("DTPA") claim requires three elements: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)). *See also Hall v. Walter,* 969 P.2d 224, 235 (Colo. 1998) ("In order to recover in a private action brought under the Colorado Consumer Protection Act (CCPA), Colo. Rev. Stat. §§ 6-1-101 et seq. (1998), the last of the five elements that a plaintiff must establish is that the defendant's actions in violation of the CCPA caused the plaintiff's injury.").

to frame a claim that plaintiffs purchased Kodiak products on the assumption that Kodiak calculated the protein content on the boxes using a method different than the one that is typically used. But plaintiffs do not claim to have special knowledge about protein testing. Because no facts are alleged to the contrary, it is plain Kodiak delivered the protein content that it promised. The fact that plaintiffs learned of a technical regulation—*post* purchase—that could provide for a different protein-content calculation under a different measuring system does not mean plaintiffs were deprived of any bargain. *See Yellow Group LLC v. Uber Techs. Inc.*, 2014 U.S. Dist. LEXIS 94093 at *16 (N.D. Ill. 2014) (dismissing for failure to state a claim because plaintiffs did not allege they were harmed by Uber's alleged misrepresentations). Their damages allegations are "purely speculative," "unsupported by specific factual averments," and they cannot state a plausible claim. *Baughman v. Martindale-Hubbell, Inc.*, 129 Ill. App. 3d 506, 511 (Ill. App. 1984). *See also Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 99 (Ill. App. 1992) (holding plaintiff, as a class representative, did not have standing to "bring a cause of action under the DPTA because of the lack of likely future damages" because plaintiff's allegations were "conclusory").

Further, plaintiffs fail to allege any facts about how they *prepared* Kodiak's products. The product recipes state that other protein sources, such as milk and eggs, should be added in the recipe. Of the products plaintiffs mention, they all allow additional protein to be added to the mix. FAC ¶ 65, 72, 79, 86, 93, 100.[12]

---

[12] For instance, the Buttermilk Powercakes, the box states that there can be up to 18 grams of protein per serving if milk is used or 21 grams if you add milk and eggs. RJN Ex 1. For the Blueberry Lemon Muffin Mix, plaintiffs admit the product contains "15g Protein" per serving "as prepared." FAC ¶ 66. Further, the recipes on the back call for eggs and milk. RJN Ex 3. The Almond Poppy Seed Powercakes may also have milk added to the recipe for additional protein. RJN Ex 4. In other words, Kodiak's products allow consumers to add even more protein.

## VII.  PLAINTIFFS FAILED TO PLEAD RELIANCE ON THE ALLEGED MISREPRESENTATIONS.

Plaintiffs fail to plead actual reliance for Kodiak's alleged misrepresentations. For example, "[u]nder the Illinois Consumer Fraud Act, 'a valid claim must show that the consumer fraud proximately caused plaintiff's injury.'" *Porter v. NBTY, Inc.*, 2019 U.S. Dist. LEXIS 190495, at *4-5, *12 (N.D. Ill. Nov. 4, 2019) (holding "defendants are entitled to judgment as a matter of law on plaintiffs' claim that the percentage of daily value calculation on the nutrition panel misled them" because no plaintiff *relied on* the daily value listed on the nutrition panel).[13]

The percent daily value of protein was not on Kodiak's Nutrition Facts panels. This is a known omission—the absence of this fact is readily apparent on the product boxes. But the consumers purchased the product with knowledge that this information was not provided (assuming they decided to check the NFP before purchase).

Here, plaintiffs do not allege they either read the daily value listed on the nutrition panel, checked Kodiak's website, did research, or actually read Kodiak's nutrition panel before purchase.[14]  Plaintiffs apparently checked only the front label of the products at issue and did not check, let alone rely on, the daily value listed on the nutrition panel.  Thus, "*[b]ecause no plaintiff relied on the daily value listed on the nutrition panel*…[n]o reasonable jury could infer the percentage of daily value listed on the nutrition panel caused the plaintiff to purchase the Product,

---

[13] *See generally  Ulrich v. Probalance, Inc.,* No. 16 C 10488, 2017 U.S. Dist. LEXIS 132202, at *7 (N.D. Ill. Aug. 18, 2017); *Gubala v. CVS Pharmacy, Inc.,* No. 14 C 9039, 2016 U.S. Dist. LEXIS 32759, at *17-21 (N.D. Ill. Mar. 15, 2016); *Krommenhock v. Post Foods, LLC,* 255 F. Supp. 3d 938, 961-62 (N.D. Cal. 2017).

[14] For example, Plaintiff Taylor states that she "made each of her purchases after reading and relying on the truthfulness of Defendants' product label that promised the Products provided the number of grams on the label.  For example, she purchased the Buttermilk and Maple cup relying on the representation of "10g Protein" per serving, and she purchased the Blueberry Lemon muffin mix relying on the representation of "15g Protein as prepared." *Id.* ¶ 66. Plaintiff Hinkley, Plaintiff Crawford, Plaintiff Owens, Plaintiff Sajnani, and Plaintiff Bassart all made similar allegations. FAC ¶ 73, 80, 87, 94 ,101.

plaintiffs' claim that the percentage of daily value calculation on the nutrition panel misled them should be dismissed." *Porter v. NBTY, Inc.*, at *4-5. Therefore, because plaintiffs did not allege actual reliance on the alleged misrepresentations, plaintiffs' claims must be dismissed.

## VIII. PLAINTIFFS' REQUEST FOR EQUITABLE RELIEF SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE A LACK OF ADEQUACY OF LEGAL REMEDIES.

### A. Plaintiffs Do Not and Cannot Sufficiently Allege the Requisite Inadequacy of Legal Remedies.

Plaintiffs' claims for equitable relief fail because they do not and cannot plead lack of an adequate remedy at law. "The right to an equitable remedy is an exceptional one, and absent statutory mandate, equitable relief should be granted only when a court determines that damages are inadequate and that equitable relief will result in more perfect and complete justice*." Kearl v. Rausser*, 2007 U.S. Dist. LEXIS 12875, at *7 (D. Utah 2007; *Delivery Serv. & Transfer Co. v. Heiner Equip. & Supply Co.*, 635 P.2d 21, 21 (Utah 1981)(stating that equitable remedy "normally only granted when damages may not accurately be ascertained or would not adequately compensate the plaintiff"); *Erisman v. Overman*, 358 P.2d 85, 88 (Utah 1961) (where adequate legal remedy is available, "one may not seek equity"). Generally, "inadequate legal remedies exist when [a party] is unlikely to be made whole by an award of monetary damages or some other legal, as opposed to equitable, remedy[.] Thus, an injury is irreparable if the damages are estimable only by conjecture and not by any accurate standard." *Johnson v. Hermes Associates, Ltd*., 128 P.3d 1151, 1158 n.8 (Utah 2005).

The Ninth Circuit in *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 843-44 (9th Cir. 2020), relying on principles of federal common law, affirmed the dismissal of a plaintiff's request for equitable remedies under California's consumer protection laws for failure to allege a lack of adequacy of legal remedies. The Court explained that while a state may authorize its courts to give equitable relief without the restriction that an adequate remedy at law be unavailable, the state

law "cannot remove th[at] fetter[ ] from the federal courts." *Id.* at 843-44 (citing *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105-06 (1945)). Guided by *York*, the Ninth Circuit held "that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 844.

Under this persuasive logic in *Sonner*, plaintiffs in federal court must allege the lack of an adequate legal remedy to state a claim for equitable relief. Plaintiffs have failed to do so here. Besides restitution, numerous federal courts across the country have applied *Sonner* to bar injunctive/equitable relief in similar consumer class actions where there was an adequate legal remedy like monetary damages.[15] Here, plaintiffs bring similar consumer protection claims under the Illinois, Texas, New York, Colorado, and Florida laws and allege they overpaid for Kodiak's products.[16] FAC ¶¶ 68, 75, 82, 89 96, 103. Because their claims rest on their alleged overpayments,

---

[15] *See also Goodrich v. Alterra Mt. Co*., 2021 U.S. Dist. LEXIS 118676, at *30 (D. Colo. 2021) (holding "that *Sonner* 'dooms the claim for equitable relief at any stage."); *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 62373, at 85 (D.N.J. 2021) (granting defendants' motion to dismiss plaintiffs' CLRA claim for equitable remedies because plaintiffs failed to plead entitlement to injunctive relief); *Hassell v. Uber Techs., Inc.*, No. 20-cv-04062-PJH, 2020 U.S. Dist. LEXIS 229310, at *23-24 (N.D. Cal. Dec. 7, 2020) (finding "the cumulative nature of any state law remedy does not alter the longstanding federal common law requirement that a plaintiff lack an adequate legal remedy to obtain equitable relief"); *Williams v. Apple, Inc.*, 2020 U.S. Dist. LEXIS 215046, at *28 (N.D. Cal. Nov. 17, 2020) (dismissing plaintiffs' FAL and UCL claims seeking equitable relief because plaintiffs had an adequate remedy at law).

[16] The UCL and CLRA are both consumer protection statutes similar to some of the Illinois, Texas, New York, Colorado and Florida consumer protection statutes at issue in this case. The FDUTPA has three elements: "(1) a deceptive or unfair practice, (2) causation, and (3) actual damages." *Kais v. Mansiana Ocean Residence*, 2009 U.S. Dist. LEXIS 25417, *3 (S.D. Fla. Mar. 25, 2009). *See also White v. DaimlerChrysler Corp*., 368 Ill. App. 3d 278, 283 (Ill. 2006) ("To bring a civil suit for damages [under the Illinois Consumer Fraud and Deceptive Business Practices Act], the [Consumer Fraud] Act requires that the plaintiff suffer 'actual damages."); *See also* NY CLS Gen Bus § 350-d (explaining "civil penalty" and damages.); *See also* New York General Business Law § 349(h); *See also* Tex. Bus. & Com. Code Ann. § 17.50(a) (stating that the Texas DTPA provides: "[a] consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish.") and Colo. Rev. Stat. § 6-1-113 (explaining

monetary damages would provide an adequate remedy for the alleged injury. *Kearl v. Rausser*, 2007 U.S. Dist. LEXIS 12875 at *7. Moreover, the availability of an adequate legal remedy is clear from the face of the FAC and thus further amendment would be futile.

In short, plaintiffs' claims in equity—such as their consumer protection claims and unjust enrichment claims—must be dismissed in their entirety. The remaining claims must be stricken to the extent they seek an injunction, restitution, or other equitable relief.

## B. Plaintiffs Do Not Have Standing to Seek Injunctive Relief.

Plaintiffs must demonstrate constitutional standing separately for each form of relief requested. *Brokaw v. Salt Lake County*, 2007 U.S. Dist. LEXIS 56269, at *5 (D. Utah 2007). To establish standing to seek injunctive relief, a plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged …conduct and the injury or threat of injury must be both real or immediate, not conjectural or hypothetical." *Id.* "[W]hile a plaintiff who has been constitutionally injured can bring an action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).

Plaintiffs are already aware of the purported deceptive nature of the labeling and are not likely to be misled into buying the relevant product in the future and, therefore, are not capable of being harmed again. *See McNair v. Synapse Grp., Inc.*, 672 F.3d 213 (3d Cir. 2012); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016); *Conrad v. Boiron, Inc.*, 869 F.3d 536 (7th Cir. 2017). Plaintiffs are fully aware and able to determine whether the challenged statements remain

damages). The Illinois Uniform Deceptive Trade Practices Act does not allow for monetary damages. *Greisz v. Household Bank* (Ill.), 8 F. Supp. 2d 1031, 1044 (N.D. Ill. 1998).

"false." *See In re Santa Fe Natural Tobacco Litig.,* 288 F. Supp. 3d 1087, 1251 (D.N.M. 2017) (holding plaintiffs' injunctive relief under IUDTPA failed, because the plaintiffs could not allege likelihood of future harm to themselves when they stated they would not purchase defendant's cigarettes in the future); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740-41 (7th Cir. 2014) (holding plaintiff is not entitled to injunctive relief because he is aware of defendant's deceptive sales practices and is not likely to be harmed by them in the future).[17]

Plaintiffs allege Kodiak's products are required to but do not include on the Nutrition Facts panel a percentage of the daily value of the protein. FAC ¶ 6. Because the products currently do not include the percentage of the daily value on the panel, plaintiff can easily determine whether the product remains "deceptive." All plaintiffs must do is look at the Nutrition Facts panel to see if the percentage of the daily value is calculated or not. Plaintiffs know the exact amount of protein that is in the product is based on the industry-standard nitrogen calculation. Plaintiffs thus know exactly what they would be purchasing. Because there is no likelihood of future harm, there is no standing to seek an injunction. *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 564 (1992) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

## IX. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS LIKEWISE FAIL BECAUSE PLAINTIFFS RECEIVED EXACT AMOUNT OF PROTEIN AS PROMISED.

In order to prevail on a claim for unjust enrichment, three elements must be met. *See Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1984). First, there must be a benefit conferred on one person by another. *See id.* Second, the conferee must appreciate or have knowledge of the

---

[17] *Fernandez v. Atkins Nutritionals, Inc.*, 2018 U.S. Dist. LEXIS 1189, at *53 (S.D. Cal. Jan. 3, 2018) (because plaintiff "now knows how [the defendant] goes about calculating its net carb claims," and because she had admitted she "now has knowledge that enables her to make an appropriate choice with respect" to the defendant's products, there was no future circumstance in which she might be "unable" to determine if it was appropriate to rely on the statements at issue);

benefit. *See id.* Finally, there must be "the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Id.* But when a plaintiff enters into a "transaction at arm's length and the plaintiff received what he bargained for" he cannot bring a claim for unjust enrichment. *S. Title Guar. Co., Inc. v. Bethers*, 761 P.2d 951, 955 (Utah Ct. App. 1988). Here, plaintiffs' unjust enrichment claims are entirely derivative of plaintiffs' alleged FDA violations. Plaintiffs have not alleged "unjust" enrichment as they received the exact amount of protein promised. Plaintiffs do not dispute that defendants accurately state the per serving grams of protein, as calculated by the nitrogen method. Therefore, plaintiffs received what they bargained for.

## X. PLAINTIFFS' 49-STATE CLASS CLAIMS FAIL BECAUSE (1) PLAINTIFFS LACK STANDING AND (2) PLAINTIFFS' UNJUST ENRICHMENT AND FRAUD CLAIMS ARE NOT TETHERED TO A SPECIFIC STATE LAW.

### A. Plaintiffs Lack Standing to Assert Class Claims on Behalf of the 49-State Class Based on Laws of States Where They Do Not Reside.

Plaintiffs lack standing to bring a 49-state class based on laws of states where they do not reside. Plaintiffs are residents in only five states but seek to represent a class for alleged violations of laws of forty-nine states for unjust enrichment and common law fraud. FAC ¶¶ 184-198. The Supreme Court has insisted that "a plaintiff must demonstrate standing separately for each form of relief sought." *Daimler v. Cuno*, 547 U.S. 332, 352 (2006). Plaintiffs have an obligation to show standing for each claim asserted in all cases, including class actions. *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) ("That a suit may be a class action… adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class …"). Courts can "address the issue of Article III standing at the pleading stage and dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products." *Schertzer*

*v. Bank of Am.*, 445 F. Supp. 3d 1058, 1072 (S.D. Cal. 2020). Even in circumstances where courts have found they have discretion to defer standing questions until after class certification, the standing inquiry can be addressed when plaintiffs bring claims from states where they do not have a connection. *In re Carrier IQ Litig.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2016).

No named plaintiff alleges a connection to forty-six of the jurisdictions where they do not reside or have not purchased Kodiak's products. Plaintiffs thus lack standing to bring claims under the laws of the states where they do not reside or did not purchase the products.

### B. The Generic Common Law Fraud and Unjust Enrichment Claims Fail Because They Are Not Tethered to a Specific State Law.

Plaintiffs' Eighth and Ninth Causes of Action for unjust enrichment and common law fraud are pled on behalf of a 49-state class but do not identify any state's law that applies. FAC ¶¶ 184-198. Plaintiffs fail to adequately plead their claim brought on behalf of the 49-state class. *See Id.*; *In re Samsung Litig.*, 2018 WL 1576457, at *4 (N.D. Cal. 2018) ("[D]ue to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal.").

## XI. CONCLUSION

Ignoring the conclusions, the few alleged facts do not "plausibly suggest an entitlement to relief*." Ashcroft v. Iqbal*, 556 U.S. 662, 1951 (2009). The Court should grant this motion.

DATED: November 1, 2021          LEWIS BRISBOIS BISGAARD & SMITH LLP


                              By: _____/s/ Douglas C. Smith_____
                                  Douglas C. Smith
                                  Eric Y. Kizirian (Pro Hac Vice Forthcoming)
                                  Michael K. Grimaldi (Pro Hac Vice Forthcoming)

                                  Attorneys for Defendants
                                  Baker Mills, Inc. and Kodiak Cakes, LLC